S09A1019. HARPER v. THE STATE.
(686 SE2d 786)

THOMPSON, Justice.
Appellant Richard James Harper was convicted of murder in the DeKalb County Superior Court in 1982. His conviction was affirmed on appeal. *Harper v. State*, 251 Ga. 183 (304 SE2d 693) (1983). In May 2008 Harper filed a motion to vacate void judgment, claiming the DeKalb County trial court lacked jurisdiction to hear his case and its judgment was void. Harper's motion was denied on the merits and he appealed. We dismiss Harper's appeal and hold that a motion to vacate a conviction is not an appropriate remedy in a criminal case, thereby overruling Division 2 of *Chester v. State*, 284 Ga. 162 (664

---

SE2d 220) (2008).

1. At the time Harper filed his motion to vacate, and prior to this Court's recent decision in *Chester*, the law in this state was that a petition to vacate or modify a judgment of conviction was not an appropriate remedy in a criminal case. *Williams v. State*, 283 Ga. 94 (656 SE2d 144) (2008); *Wright v. State*, 277 Ga. 810, 811 (596 SE2d 587) (2004); *Shields v. State*, 276 Ga. 669, 671 (581 SE2d 536) (2003); *Lacey v. State*, 253 Ga. 711 (324 SE2d 471) (1985); *Crane v. State*, 249 Ga. 501 (292 SE2d 67) (1982); *Waye v. State*, 239 Ga. 871, 874 (238 SE2d 923) (1977); *Waits v. State*, 204 Ga. 295 (10) (49 SE2d 492) (1948); *Claughton v. State*, 179 Ga. 157 (1) (175 SE 470) (1934); *Gravitt v. State*, 165 Ga. 779 (3) (142 SE 100) (1928); *Hughes v. State*, 159 Ga. 818 (5) (127 SE 109) (1925); *McDonald v. State*, 126 Ga. 536 (55 SE 235) (1906). In order to challenge a conviction after it had been affirmed on direct appeal, criminal defendants were required to file an extraordinary motion for new trial, OCGA § 5-5-41, a motion in arrest of judgment, OCGA § 17-9-61, or a petition for habeas corpus. OCGA § 9-14-40. A majority of this Court ruled otherwise in *Chester*, holding that OCGA § 17-9-4 allows criminal defendants to challenge their convictions at any time by filing any motion or pleading alleging their conviction is void.[1]

This case and the many cases filed in the year since *Chester* was decided, however, have exposed the deficiencies of that opinion, and we find it was wrongly decided. Its ruling, creating a new post-appeal procedure for challenging a criminal conviction, marked an improvident departure from more than a century of precedent, significantly undermined the finality of criminal judgments, and has proved unworkable inasmuch as Georgia law is silent as to the procedural framework and rules applicable to this newly created remedy. Unlike the myriad rules governing previously recognized and statutorily created procedures for challenging a criminal conviction, there are no rules or precedents guiding individuals in the filing of, or courts

---

[1] Division 1 of *Chester* held "[t]he denial of a petition to correct a *sentence* on the ground that the original sentence was void is appealable as a matter of right." (Emphasis supplied.) *Williams v. State*, 271 Ga. 686, 689 (1) (523 SE2d 857) (1999). In contrast to *Chester*'s Division 2, that holding was supported by a long line of this Court's precedents. See *Williams*, 271 Ga. at 688, n. 6. Those decisions are not, however, based upon OCGA § 17-9-4, which indeed is never mentioned in *Williams*. Rather, "[t]he theory of these cases [is] that a sentencing court retains jurisdiction to correct a void sentence at any time." 271 Ga. 688-689. In other words, we have a long line of precedent recognizing a *remedy* in the sentencing court within which the *right* to challenge a void sentence may be asserted. As our precedents before *Chester* made equally clear, the only remedy for asserting the right to challenge a judgment of conviction as void under OCGA § 17-9-4 is one of the three statutory procedures just listed.

in their consideration of, post-appeal motions to vacate a criminal conviction.

While "[t]he rule of stare decisis is a wholesome one, [it] should not be used to sanctify and perpetuate error. . . . Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes." *City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 732-733 (13 SE 252) (1891). See *Garza v. State*, 284 Ga. 696, 703 (670 SE2d 73) (2008) (overruling three decades of precedent requiring only slight movement under kidnapping statute); *Humthlett v. Reeves*, 211 Ga. 210, 215 (1) (b) (85 SE2d 25) (1954) (stare decisis not applicable where decision so recently rendered and in such direct conflict with precedent that "no one could have been led to rely upon it as permanently fixing the law and been misled by it to his hurt and injury"). Accordingly, Division 2 of *Chester* is overruled and the law of criminal appellate procedure restored to its pre-*Chester* state, whereby a petition to vacate or modify a judgment of conviction is not an appropriate remedy in a criminal case.

2. Applying the correct law to the case at hand, we hold Harper was not entitled to file a motion to vacate his criminal conviction and his appeal is subject to dismissal. See *Foster v. Bowen*, 253 Ga. 33 (315 SE2d 656) (1984).

*Appeal dismissed. All the Justices concur, except Hunstein, C. J., Benham and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

This is a straightforward case that falls squarely within the parameters of this Court's recent decision in *Chester v. State*, 284 Ga. 162 (2) (664 SE2d 220) (2008). Richard James Harper was found guilty of murder in DeKalb County Superior Court in 1982. His conviction was affirmed on appeal. *Harper v. State*, 251 Ga. 183 (304 SE2d 693) (1983). On May 14, 2008, Harper filed a "Motion to Vacate Void Judgment," in which he alleged that the judgment of conviction rendered in DeKalb County Superior Court was void because the murder for which he was convicted had actually taken place in Fulton County. See OCGA § 17-9-4 ("The judgment of a court having no jurisdiction of the person or subject matter, or void for any other cause, is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."). The trial court denied the motion, prompting this appeal.

Because the evidence presented at trial showed that the crime occurred at Overnight Transport, located at 2427 Moreland Avenue in DeKalb County, Georgia, the DeKalb County Superior Court had jurisdiction to try and convict Harper, and his conviction was not

void. See *Chester*, supra, 284 Ga. at 163 (2).[2] Therefore, under this Court's decision in *Chester*, the judgment of the trial court would have to be affirmed.

Instead of following *Chester*, however, the majority reverts back to and embraces the arguments set forth in the *Chester* special concurrence that were expressly rejected in that case. In overruling this Court's one-year-old decision in *Chester*, the majority now states that *Chester* "creat[ed] a new post-appeal procedure for challenging a criminal conviction, [which] marked an improvident departure from more than a century of precedent, significantly undermined the finality of criminal judgments, and has proved unworkable." The majority, however, is incorrect. As explained more fully below, our decision in *Chester* was based on a straightforward analysis of the plain language of OCGA § 17-9-4 — an analysis completely ignored by the majority — and was specifically designed to make our overall case law *more consistent* with the *plain language* of OCGA § 17-9-4, rather than *less so*, as our case law prior to *Chester* had been.

Again, OCGA § 17-9-4 provides that "[t]he *judgment* of a court having no jurisdiction of the person or subject matter, *or void for any other cause*, is a mere *nullity* and *may be so held in any court when it becomes material to the interest of the parties* to consider it" (emphasis supplied). By its plain terms, the statute would allow a "judgment," "void for any . . . cause," to be declared so in "any court" at a time when the invalidity of the judgment becomes material.

The majority's analysis would prevent a criminal defendant from attacking a void sentence through a motion to vacate, and limit the statute's application to, for example, subsequent unrelated proceedings where the validity of a previous conviction might be called into question. See *Brown v. Earp*, 261 Ga. 522 (407 SE2d 737) (1991). While it is true that the statute would *allow* a collateral attack on a void conviction in a subsequent action wherein a party attempted to use that void conviction against the defendant (see id.), the majority's attempt to *limit* the plain language of the statute to apply only to such a scenario fails for at least two reasons. First, as the majority would have to acknowledge, OCGA § 17-9-4 has repeatedly been held to authorize a free-standing attack on a void sentence. See, e.g., *Williams v. State*, 271 Ga. 686 (1) (523 SE2d 857) (1999).[3]

---

[2] I note that "[t]he other issues raised by [Harper] are not matters which would render his conviction void and are, therefore, not within the ambit of his right to a direct appeal from a motion to vacate a void judgment." (Citation omitted.) *Jones v. State*, 282 Ga. 568, 569 (3) (651 SE2d 728) (2007).

[3] The majority's argument that OCGA § 17-9-4 has no application to a challenge to a void sentence is unpersuasive. Indeed, as the majority correctly acknowledges, "a sentencing court

Second, OCGA § 17-9-4 is a *criminal* procedure statute. We are not dealing here with the question whether a civil authorization to attack a judgment as void has any application in the criminal context. As explained in more detail below, the only real question is what is meant by the term "judgment" as it relates to the application of OCGA § 17-9-4.

It is well settled that, consistent with the statutory language of OCGA § 17-9-4 permitting an attack on a void "judgment," a motion to vacate a void *sentence* is a cognizable action, and the denial of such a motion gives rise to the right of a direct appeal. See *Williams*, supra, 271 Ga. at 686 (1) ("the denial of a petition to correct a sentence on the ground that the original sentence was void is appealable as a matter of right"). OCGA § 17-9-4 does not limit application of the term "judgment" to only criminal "sentences." Thus, it cannot be said that the statute, by its terms, *precludes* the viability of a motion to vacate an underlying conviction that is just as "void" as a void sentence.

In *Chester*, this Court merely recognized that, if a void *sentence* can be properly attacked consistent with the plain language of OCGA § 17-9-4, and a "sentence" is merely one part of the overall *judgment* of conviction, a void *conviction* itself must also be subject to attack pursuant to OCGA § 17-9-4. A conviction in a criminal case is no less a "judgment" than the sentence imposed, and OCGA § 17-9-4 makes no distinction between "sentences" and "convictions" through its use of the general term, "judgment." Thus, by its plain language, OCGA § 17-9-4 would allow an attack on a void conviction in the same manner that this Court has consistently allowed an attack on a void sentence.

Prior to *Chester*, a defendant could challenge both the underlying conviction and the sentence if done in a separate collateral proceeding. If, however, a defendant initiated a free-standing challenge, the defendant could only challenge the "sentence" portion of the judgment, and not whether the underlying conviction itself was void. Under this pre-*Chester* standard, the plain meaning of the general word "judgment" in OCGA § 17-9-4 had been lost, creating a world where, in one instance, a "judgment" included both the underlying conviction and the sentence, and, at other times, it included only the "sentence."[4] *Chester* ensured that our case law

retains jurisdiction to correct a void sentence at any time." *Williams*, supra, 271 Ga. at 689 (1). OCGA § 17-9-4 supports this proposition. A void judgment "is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." OCGA § 17-9-4. The statute *embraces* the line of cases dealing with attacks on void sentences, rather than existing independently of those cases as the majority suggests.

[4] There is much that can be said about how a criminal judgment can be broken down into

would become *more* consistent with the plain wording of OCGA § 17-9-4 by eliminating the unnecessary distinction between a "sentence" and a "conviction" for purposes of allowing a challenge to a void "judgment" pursuant to the statute. Accordingly, contrary to the majority's position that *Chester* was "wrongly decided" and "marked an improvident departure" from prior case law that did not allow a defendant to challenge a void conviction through a motion to vacate, this Court actually held true to the plain text of OCGA § 17-9-4 and harmonized its plain meaning with existing case law. The majority does not bother to discuss the statutory text in this case.

The fact that *Chester* was a close decision only underscores the importance of stare decisis considerations here, as a change in Court personnel should not affect the state of the law as already decided by a majority of this Court in a prior case. See, e.g., *Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999) ("[I]t is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it") (citation and punctuation omitted).

Accordingly, because *Chester* was not a "wrongly decided" case as the majority contends, but, rather, the result of a simple and necessary application of the plain terms of OCGA § 17-9-4, I would follow the binding precedent of *Chester* and affirm the judgment below.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

DECIDED NOVEMBER 23, 2009.

Richard J. Harper, *pro se*.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.

---

component parts consisting of the finding of guilt and the sentence and the role each plays in making up the final judgment of conviction. It is sufficient to say that even if the Court had previously been correct in artificially singling out the terms "sentence" and "conviction," the underlying conviction is more like a "judgment" than is the sentence alone.